IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

PETER GARDULL,

                Plaintiff,        Case No. 3:04 CV 7536

   -vs-

                                                MEMORANDUM OPINION

PERSTORP POLYOLS, INC.,

                Defendant.

KATZ, J.

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. No. 18). Plaintiff has responded (Doc. No. 26), and Defendant has replied (Doc. No. 32). The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367. For the following reasons, the Court grants Defendant's motion.

## BACKGROUND

Plaintiff Peter Gardull ("Gardull") began working for Defendant Perstorp Polyols, Inc. ("Perstorp"), a chemical manufacturer, in 1996. After two-and-a-half years, Gardull bid into a position in Perstorp's formaldehyde plant as an Assistant Process Operator/Loader, which required him to operate equipment that pumped chemicals throughout the plant.

On September 14, 2000, Gardull reported to work under the influence of prescription painkillers. Perstorp suspended him until his doctor deemed him fit to work around hazardous chemicals. It also required him, per its substance abuse policy, to complete a substance abuse treatment program.

Gardull returned to work after his suspension, and completed a one-month, out-patient, drug-treatment program.

Perstorp gave Gardull a formal verbal warning on January 31, 2001, for a safety-rule violation, and a written warning in August of 2001 for violations of Perstorp's no-fault attendance policy. In April of 2002, Perstorp granted Gardull leave to complete a substance abuse program.

Later in the spring of 2002, Perstorp closed the formaldehyde plant and reassigned Gardull to another plant. When Gardull complained about his new position, Perstorp's president, David Wolf, gave him the option to take a voluntary layoff until a better position came open. Gardull chose to be laid off; he collected unemployment for six months.

When a warehouse job came open in December of 2002, Perstorp invited Gardull to interview for the job. In his interview, Gardull informed Linda Lower ("Lower,") the warehouse supervisor, of his past problems with drug abuse and his discipline for reporting to work impaired. Lower hired Gardull for the warehouse position, which he began on December 17, 2002.

On January 24, 2003, Gardull received a verbal warning for carelessness. On February 25, 2003, he received a written warning for a February 21 "no-call/no-show." Also on February 25, Gardull attempted to lift more bags with a forklift than he had been authorized to lift, which caused him to drive the forklift partway off the loading dock. He was given a warning for failure to follow directions and was suspended for a day without pay.

On March 25, 2003, Perstorp gave Gardull a "final written warning" for absenteeism, which noted that he had been absent all or part of eleven days since he started working in the warehouse in December of 2002. Gardull missed work for all or part of the day on May 28, 2003, to go to traffic

court, on June 5, 2003, due to car problems, and on Jule 19, 2003, due to illness, but was not disciplined for any of those absences. However, on July 7, 2003, Perstorp suspended Gardull for one day for carelessness.

Gardull then missed work for most of August 14, 2003, and all of August 18 and 19, 2003. Lower then determined Gardull should be terminated. Perstorp's Human Resources Manager and its President, Wolf, concurred in Lower's recommendation, and Lower terminated Gardull on August 25, 2003. Gardull filed a charge with the Ohio Civil Rights Commission and the Equal Employment Opportunity Commission in December of 2003, claiming he had been fired in violation of the Americans with Disabilities Act ("ADA"). The EEOC gave Plaintiff a right-to-sue letter.

Gardull then brought this lawsuit in the Lucas County, Ohio Court of Common Pleas, alleging that Perstorp violated the ADA and Ohio Revised Code §§ 4112.02 and 4112.99, and wrongfully terminated him in violation of Ohio's public policy. Perstorp removed to this Court on the bases of federal-question and supplemental jurisdiction.

## DISCUSSION

Defendant has now moved for summary judgment on all of Gardull's claims.

*A. Summary Judgment Standard*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions

3

on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2541, 91 L. Ed. 2d 202 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not

himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

B. Plaintiff's ADA and Ohio Revised Code Chapter 4112 Claims

> To establish a prima facie case under the ADA, a plaintiff must show that:
>
> (1) he or she is disabled; (2) is otherwise qualified for the job, with or without reasonable accommodation; (3) suffered an adverse employment decision; (4) the employer knew or had reason to know of his or her disability; and (5) after rejection or termination the position remained open, or the disabled individual was replaced.

*Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1185 (6th Cir. 1996) (internal citations omitted). Similarly, under Ohio Rev. Code § 4112.02(A), a plaintiff must show:

> (1) that he or she was handicapped, (2) that an adverse employment decision was taken by an employer, at least in part, because the individual was handicapped, and (3) that the person, though handicapped, can safely and substantially perform the essential functions of the job in question.

*City of Columbus Civ. Serv. Comm'n v. McGlone*, 697 N.E.2d 204, 206 (Ohio 1998). Ohio courts regard the § 4112.02(A) prima facie case as "virtually identical" to the ADA's, *Sandinsky v. EBCO Mfg. Co.*, 730 N.E.2d 395, 398 (Ohio Ct. App. 1999), and "look to regulations and cases interpreting

5

the [ADA] for guidance" in interpreting the Ohio law." *McGlone*, 697 N.E.2d at 207. The Court, therefore, will examine Plaintiff's claims under both the state and federal statutes using the same analysis.

"Proof of [the prima facie case], in the absence of an explanation by the employer, creates a mandatory inference that the employer intentionally discriminated against the disabled individual by taking an adverse employment action 'solely' because of his or her handicap. If the employer offers a legitimate reason for its action that is unrelated to the employee's disability, the plaintiff will bear the burden of establishing that the proffered reason is a pretext for unlawful discrimination." *Monette*, 90 F.3d at 1185-86. To show that the employer's stated reason is pretext, a plaintiff must show that the given reason is false and that discrimination was the real reason for the employer's action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515-16, 113 S. Ct. 2742, 2752, 125 L. Ed. 2d 407, 422 (1993).

Perstorp claims Gardull cannot establish a prima facie case of disability discrimination because he cannot show that he is disabled, nor that he is qualified for the position, and that, in any event, Gardull has presented no evidence that Perstorp's stated reason for firing him was pretext.

1. Disabled

Under the ADA:

The term "disability" means, with respect to an individual--
(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
(B) a record of such an impairment; or
(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). Ohio's definition is substantially similar. Ohio Rev. Code § 4112.01(A)(13). "Major life activities" are "those activities that are of central importance to daily life." *Toyota Motor Mfg., Ky. v. Williams*, 534 U.S. 184, 198, 22 S. Ct. 681, 691, 151 L. Ed. 2d 615 (2002). "It is

6

insufficient for individuals attempting to prove disability . . . to merely submit evidence of a medical diagnosis of an impairment. Instead, the ADA requires those 'claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial.'" *Id*. at 198. When "working" is the "major life activity" the impairment affects:

> The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(I).

Gardull has failed to present evidence showing that his drug addiction substantially limited a major life activity. Though he cites to a case in which the plaintiff demonstrated that heroin addiction substantially impaired a major life activity, *MX Group, Inc. v. City of Covington*, 106 F. Supp. 2d 914, 918 (E.D. Ky. 2000), he has presented no evidence showing that his *own* major life activities were so impaired. In fact, Gardull testified at his deposition that his drug abuse problem did not interfere with his daily life in any way. (Doc. No. 22, pp. 61-63). While the evidence shows that Gardull's addiction caused him to show up to work impaired once and his participation in a treatment program prevented him from getting a railroad position he bid for, it does show that his ability to perform a class or broad range of jobs was significantly restricted.

Moreover, while Perstorp knew of Gardull's status as a recovering drug addict, Gardull has presented no evidence that he had a record of or was regarded by Perstorp as having an impairment that substantially limited a major life activity, and such a conclusion does not follow from the employer's mere

7

knowledge of Gardull's condition. He has presented no evidence showing that Perstorp viewed him as unable to perform a broad class of jobs. Therefore, there is no genuine issue of fact as to Gardull's status as "disabled," and Perstorp is entitled to summary judgment on that ground.

2. Otherwise Qualified

Perstorp claims Gardull was unqualified for the position due to his excessive absenteeism. "'An employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA.'" *Brenneman v. MedCentral Health System*, 366 F.3d 412 (6th Cir. 2004) (quoting *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998)). In *Brenneman*, the plaintiff had 193 unapproved absences and 34 late arrivals or early departures during his twenty-seven years in the defendant's employ. *Id*. at 416. The absences mostly related to medical problems other than the plaintiff's disability, which was diabetes, though his last absence, after which he was fired, was diabetes-related. *Id*. The Sixth Circuit concluded that even if the employer had granted the plaintiff medical leave for his diabetes-related absences, he would still be unqualified for the position due to his excessive absenteeism. *Id*. at 418-19.

Here, though Gardull's absences were unrelated to his disability, his excessive absenteeism required his co-workers to perform his job. It therefore rendered him unqualified for the position, for which regular attendance was a requirement. Moreover, as explained below, Gardull cannot establish as pretext Perstorp's determination that his absenteeism was unacceptable. Therefore, Gardull has failed to show he was qualified for the position, a requirement of his prima facie case.

3. Legitimate Non-discriminatory Reason and Pretext

8

Even if Gardull could establish a prima facie case, he would be unable to show Perstorp's articulated legitimate non-discriminatory reason for terminating him is pretext. Perstorp claims Gardull was absent for all or part of seventeen days between the time he returned to work in December of 2002 and his termination in August of 2003, and that it terminated him for excessive absenteeism. In response to Perstorp's motion for summary judgment, Gardull has failed to identify evidence in the record showing either that Perstorp's stated reason is false or that discrimination was the real reason Perstorp fired him, though it is his burden to do so.

Gardull has not challenged and has produced no evidence contradicting Perstorp's description of his attendance record. Moreover, as Perstorp points out, the only evidence in the record showing that Perstorp treated other employees more favorably by allowing them to miss more days of work than Gardull is Gardull's own testimony about what other co-workers told him, which is inadmissible hearsay. Additionally, Gardull stated that the two employees he mentioned in his deposition testimony were on disability and FMLA leave, respectively. They were therefore not similarly situated to Gardull.

Defendant argues that the "same actor" inference, which "allows one to infer a lack of discrimination from the fact that the same individual both hired and fired the employee," applies here because Lower hired Gardull into the warehouse position with knowledge of his drug addiction, and was also the supervisor who, eight months later, made the decision to fire him. *See Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 463 (6th Cir. 1995) ("An individual who is willing to hire and promote a person of a certain class is unlikely to fire them simply because they are a member of that class. This general principle applies regardless of whether the class is age, race, sex, or some other protected classification.")

9

Gardull claims Perstorp's argument "ignore[s] Plaintiff's claims that his supervisor and fellow employees in the warehouse constantly complained to Linda Lower about his drug addiction and his unwanted position in their department as an employee due to his drug addiction." (Doc. No. 26, p. 6.) Gardull's assertion that his claims alone are sufficient to create an issue of fact for the jury to decide misapprehends the summary judgment standard, which is set out above. That standard requires Gardull to identify actual evidence in the record that supports his claims, and he has not done so. While there is evidence showing that Gardull complained to Lower about a co-worker teasing by calling him "brain dead" after he provoked a truck driver by using an inappropriate Spanish word, the evidence shows that Lower reprimanded the co-worker for the teasing. Importantly, Gardull cites to no testimony or other evidence in the record showing that his co-workers in the warehouse complained to Lower about his addiction or sought to remove him from their department.

Gardull claims that his testimony that his co-workers harassed him in the warehouse by calling him "brain dead" and "our token recovering addict," and his testimony that a supervisor told him that he did not get a railroad position he bid for because he was in a substance abuse program, are evidence of discrimination. However, Gardull's Complaint does not set forth a claim of failure to promote or a hostile work environment claim, and he has failed to present any evidence linking any failure to promote or workplace harassment to his termination. As stated above, Gardull has presented no evidence that the allegedly harassing co-workers communicated their purported animus to Lower or that she acted on it.

Because Gardull cannot show that he is disabled and, in any event, cannot show that Perstorp's articulated reason for terminating him is pretext, the Court grants summary judgment in favor of Perstorp on Gardull's ADA and Ohio Revised Code Chapter 4112 claims.

*C. Plaintiff's Wrongful Termination in Violation of Public Policy Claim*

While the Sixth Circuit has acknowledged claims for wrongful termination based on the public policy embodied in Ohio Revised Code § 4112.02's prohibition of disability discrimination, such a claim will fail where the plaintiff cannot present sufficient evidence showing that he is a member of the protected class, i.e., that he is disabled. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 939-40 (6th Cir. 2000). As explained fully above, such is the case here. The Court therefore grants Perstorp's motion for summary judgment on Gardull's wrongful discharge claim.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. No. 18) is granted.

IT IS SO ORDERED.

      s/ *David A. Katz*
      DAVID A. KATZ
      SENIOR U. S. DISTRICT JUDGE